Good morning, Your Honor. May it please the Court, Russell Tyler on behalf of plaintiffs and appellants Richards Industrial Park and Mark Barmezzo. The key issue, I think, on this is whether or not one can consider extrinsic evidence in interpreting whether or not a memorandum is sufficient under the statute of frauds. And there are two cases, I think, that bear on that that have been cited in the papers. One is the Alameda Beltline case that said if you can look at other documents or evidence and you can do that, so long as the memorandum you're looking at provides the key, the language from the court, as a way of interpreting what the memorandum is supposed to say. Here's my difficulty that you might help me with. As I read California law, which I think controls here, the statute of frauds requires not only a writing by the FDIC, but some indication in writing of the consideration that your clients are going to put into the contract. In other words, what writing in this record or what writing do you think you might have discovered that would have showed a promise by your clients to pay the loans promptly? And if so, is that sufficient consideration? Yes, it is, Your Honor. And I'd like to point out that the e-mail that has been focused on here has two sentences. The first sentence. Speak up a little bit. You can pull the mic up. Okay. The e-mail we've been looking at has two sentences. The first sentence talks about the 10 percent reduction. The second sentence says, please work with your lender to arrange financing. Now, there's something else in that. Will you read the whole thing to me? Yes, Your Honor. The e-mail is dated September 15, 2010, from Marty O'Riordan to Mark Barmezzo. And the e-mail states in whole, the committee has approved the case for a 10 percent. Hold on. We'll just go on that. The committee has approved. The committee has approved. Well, doesn't that indicate the committee would be the FDIC, wouldn't it? Yes, Your Honor. And FDIC is not an Eli Mosner-y outfit, is it? You know, they're not a charitable corporation. Yes, correct, Your Honor, but there is consideration. And the committee, the committee has approved. Wouldn't that indicate that the committee has followed the Federal statute? I believe so, that they have followed all the requirements. I never mentioned that in your brief, but that seems to kind of strike out. The committee has done something. It must be in writing. We have tried to get the committee notes under Rule 26, but weren't able to do so. We do have this e-mail, and it says the committee has approved the case for a 10 percent discount on your loan. And I think that one other question. Yes, Your Honor. I can't understand it here. Two law firms, and there's only a contract issue. The issue is only the statute of promise. How come you don't know what the FDIC records are? Or do you? I can't get them, Your Honor. I asked under Rule 26 to get them, and I could not. Because it's... You mean to say the consul with only that little issue would not disclose that to you? The response was the motion to dismiss or dispose of the case, they had no obligation under Rule 26 to provide the FDIC notes. Well, let's go backwards in this case for a second. Let's assume that the e-mail itself doesn't satisfy the statute of frauds. What communication from you to the FDIC, your side, which presumably you wouldn't have to discover from them because you would have it, what communication from you establishes your obligations under this contract? Your Honor, we had this. We submitted an offer, which was our e-mail. Well, I've seen it. What does that e-mail say? Please accept this e-mail as my offer for a discount of 10 percent on my notes with the FDIC. And what did you offer to do in that? I understand. I'd like the FDIC to reduce all loans that it had for me by 50 percent. But where is your promise to do something in return? Well, if I could address it this way, Your Honor. It's the second – I was trying to get to this point. The second sentence of the e-mail in question from the FDIC says, please work with your lender to arrange financing. That's reference to the party obligation, which is pay these loans off. The existing lender is the FDIC as receiver for the Hoya Bank. The only reason to have my client's lender contact them is to arrange a payout. Okay. But I'm asking a very specific question because I've looked at the record and I can't find it. I'm looking for some promise in the record by your clients to do something if the FDIC does something in return. I understand you can't discover what their committee notes say, but surely you had access to any written promises your clients made to do something. Is that the only one, the one you've just identified for me? Well, I haven't considered that particular issue, Your Honor. And the reason for that is that the memorandum has to be signed by the party to be charged. So it's their obligation. Well, but under California law, I think the statute of frauds requires that the writing be sufficient to demonstrate what your obligation would be with the obligation of the other side. Right. And tell me where in writing, other than the things you've pointed out so far, where in writing is something in which you promise to do something? Well, I don't have that before me, Your Honor. But I think that this is sufficient because it references the agreement back to arrange financing with the lender. That's referencing the other part of the agreement. And this is under the California Supreme Court most recently in Sterling v. Taylor, said that even if the memorandum is inked, I think the word it used was unintelligible to outside parties. If the memorandum shows the intent of the parties, it's sufficient. Here, a reference to financing with lender is a reference to this offer of a 10 percent reduction means you get your financing with your lender in here and pay off these loans. That was the deal. It's all part of that e-mail. It's subscribed by the party to be charged, the FDIC in this case. So let me ask you a question. If I understand it, after you file your complaint, the agency, I think a national something that was representing the FDIC, denied any claim. Isn't that true? No contract. It was a different claim, Your Honor. It was a claim against La Jolla Bank and its officers. It did not include. Yes, I know. But it was against. But that claim I know was against. Wasn't that against the FDIC? They denied any contract. And then later, the FDIC said it's okay as to that apartment complex. Well, it was two different things. The claim was with respect to compromising potential litigation against the FDIC as a receiver for La Jolla Bank. After that claim was denied, then there was a contract. This e-mail came up later after that. I see. Let's assume you have no claim against La Jolla Bank. Okay. What were you doing? What would you do in return for this 10 percent reduction against the FDIC that they weren't entitled to in the first place? Early payoff of the loans. Early payoff before the note date of the loans? Yes, Your Honor. Okay. Let's go back for a second to the FDIC minutes. Am I right in thinking that those minutes wouldn't establish in writing any promise by you? I think they would. You see, you think those minutes would establish that your folks made a promise to pay off the loans early? I do, Your Honor. And then because I've never seen this before, help me with this. Is the e-mail from, and it's not from the FDIC, it's from an agent for a contractor, is that sufficient to bind the FDIC? It is a sufficient memorandum. Is it signed by the party to be? It's signed by the FDIC. Is it? It's signed by, who sent the e-mail? Marty O'Riordan is the agent of the FDIC. Was he the agent of the FDIC or was the agent of a contractor dealing with the FDIC? I would assert it's the same difference, Your Honor. He is the authorized person to contact my client, communicate my client. Not only that, Your Honor, he says the committee has approved this. So he's going beyond his authority saying the committee has approved this. So that committee approved a deal. And that's what he's representing. And if we could get those documents, there would be no doubt. I was asking a much more technical question, which is, is an e-mail a sufficiently signed memorandum? Yes, Your Honor. This was briefed. They brought that up in their opposition. It's not raised in front of us. That's why I'm asking. There's a California civil code statute that talks about it. It says that e-mails constitute writings under the statute of frauds. I could turn to that, but it's a civil code section. There's case law in the Ninth Circuit that says an e-mail is sufficient under the statute of frauds. Okay. And then one last question for me, at least. As I read the district court record, you were arguing that the e-mail, the September 15th e-mail itself, satisfied the statute of frauds without regard to any additional writings. Do you maintain that argument now, or are you now arguing that it only satisfies the statute of frauds if you put some other writings together with it? I believe both are true. I believe the first part is true, that by itself it's sufficient. If it's not, I'm just asking for leave to amend and also to get some discovery, get those committee notes, so we can find out what the – there's going to be writings on this. We know that. I ask you a question here. There's – this is a 12B6 dismissal, right, on the complaint, right? Yes, Your Honor. And it has to be based on probably whether or not under Rule 8 you had a plain statement of relief, because it's not a fraud case. Now, what I want to know is the court first said you lose because no consideration is shown, and you came back with the motion to say that there was additional consideration you were going to pay off the loan in advance. And then the judge switched and said, well, you're beat on the statute of frauds. Did you have a chance to argue that or to present anything, or was that come to you without the chance to respond or make any argument? Your Honor, it was submitted without oral argument. And I put in my – I had one chance at it. It was my opposition. I requested on my opposition a number of different times to leave to amend. And I did not know where the court would rule ultimately, but I did not have a chance for oral argument or for any other. But as I'm saying, I told you it was my last question. I guess I was mistaken. The district judge originally thought there was no showing of consideration. Yes, Your Honor. And you said we can show consideration if we can only have discovery. Actually, I said if I had leave to amend. Okay. So tell me what, when you asked for leave to amend, you intended to show in terms of writing that showed consideration. Well, there are two points on that, if I may. Under California law, and we briefed this, you do not have to show consideration in a memorandum to satisfy the statute of frauds. And we briefed under arcane law, but pre-1872, under the statute, you did. After 1872, you do not. And we've cited the cases that say that. But did the judge decide that? Because I must tell you, as I read California law, it seems to say that the memorandum needs to contain the promises of both sides. Well, we do have the memorandum, the e-mail saying arrange lender financing, which if you are allowed under California law, the Supreme Court, you can use that. You can use extrinsic evidence to come in and say what does lender financing mean? It means pay off the loan. So we get both sides through that, through California law saying if it's unintelligible to third parties, if it shows an indicia by the party to be charged of what's to happen here, lender financing means pay off, that's the other side of the agreement. I reserve the balance of my time, Your Honor. Thank you. Counsel. Good morning. May it please the Court. Jerome Madden for the FDIC. The first point I'd like to make, Your Honor, is counsel made a reference to an e-mail that's put there. Put your mic up and speak up. Yes, sir. The first point I'd like to make is that counsel mentioned an e-mail, other than the September 15th, 2010 e-mail, that is not in the complaint or in the record at all. The first thing he said, that e-mail from RIP, that they're going to do something quick, get all of it, that e-mail is not in the record. Well, but I think that that's his point. His point is that this was dismissed on a 12B6 motion and that he thought he could amend his complaint to bring in more allegations if only given the opportunity. So tell me why that e-mail, if brought in, wouldn't help make his case. Right, Your Honor. The reason that the Court did not allow RIP to amend is because it would be futile. And the reason it would be futile is because the Court noted the statute of frauds is a very old statute, of course, and it requires that all the essential terms be in the writing. That's the whole purpose of it, to prevent fraud. And so it requires with reasonable certainty that the writing demonstrate the subject matter of the loan and the terms and conditions of all promises constituting the contract. Well, if you're right, why did the FDIC, if there was no contract and the statute of frauds applied to what was said, why did they ever pay the Vista Loma arrangement of 10 percent off? Well, Vista Loma is different, Your Honor. Vista Loma is not. Now, wait a minute. I'm saying if there was no contract. That's what you're saying. There's no contract here. Then they shouldn't have paid Vista Loma. No, Your Honor. The e-mail of September 15th did reference the Loma Vista loan. That's what it was. It didn't reference the Loxbury property. Well, if it referenced the Vista Loma loan, then it must have had, it must have completed with the statute of frauds.  Not one loan, but loans. That was the text. Why isn't that enough to open up the question of what is the interpretation of this written document? Right. Statute of frauds, Your Honor. The writing of the loan. I'm not interested in this, so let me focus your question on it. If this writing, the September 15th e-mail, satisfies the statute of frauds with respect to the one property. I didn't say that, Your Honor. I'm saying that we did agree ultimately to pay the 10 percent reduction on the loan. Well, then I need to know your position. Do you, does this writing satisfy the statute of frauds? With respect, well, let me finish my question. You may want to change your answer. With respect to the property that you did reduce, Prince Paul? No. No, it doesn't. Because it doesn't contain all the promises of both sides. All it says is, committees approve your reduction on the loan. Okay, so if it doesn't, if it doesn't, but you nonetheless performed, which is to say you said to them, fine, we'll take the 10 percent discount and you can pay off the loan. And if the writing is ambiguous, why isn't that some evidence of part performance of a larger, of a larger agreement? There wasn't any larger agreement. There's no allegation that this, there's no allegation in the complaint that the low of this, the loan, had anything to do with the Roxbury property. There are allegations in the complaint about how the Roxbury property was a part of several transfers that took place, ultimately trying to cultivate it in the so-called dream home, the 23,000 square foot home in Arizona. But there's nothing in there in the complaint about the low of this, the loan. And the whole point of the statute of frauds is, at a minimum, it has to describe the property that's a subject of the contract. This email not only doesn't have the terms and conditions of what RIP is going to do, it doesn't even refer to the property. And, you know, that's one thing to say in citing Sterling v. Taylor, to say, well, if it's ambiguous, you can somehow, you know, have parole evidence. But that's not what Sterling v. Taylor says. You can, if it's ambiguous, that's, you can have parole evidence, but you have to have the essential terms of the contract and you must identify the property. In Sterling-Taylor v. Taylor, the description of the property was by street. And the court said, well, that's enough that you can figure out what the property is. In this case, the property is at war with the email. The email talks about Loma Vista. Well, the email text talks about the subject is Loma Vista, but the text is loans. And really the only issue in this whole appeal is a very simple issue, and that is whether or not there's other writing or materials which establish that the statute of frauds was not violated. Incidentally, there's nothing in the complaint itself except what is listed here on the statute of frauds. Is that correct? I wonder that the text of that message was in the complaint, right? Yes, the September 15th. But not the title. The title was not in that complaint. It was only about the committee has agreed to the loans. Isn't that right? That may be correct. But the court can consider in a motion to dismiss any document incorporated. Right. An email. There's no dispute that the subject line of the email was Richards Industrial Park, Loma Vista. That came out not in the designation of the complaint. That came out otherwise. And there's no dispute about it? Well, I know, but you've got to show when you get a dismissal on 12b-6, not on the defense, but on whether the complaint states it caused a breach. Well, Your Honor, if other evidence is introduced and there's no objection to the dispute, then that's what it means. Well, I think our case law is that if something is incorporated by reference, it's fair game on a 12b-6 motion. Let me ask you the question that I asked your opponent. With respect to we're talking here now about the Roxbury properties, right? Yes. I'm sorry. With respect to those, were the notes due? No, they were not. And so if they paid them off early, that would have been consideration? I don't think so, Your Honor. Why not? Well, any performing loan, of course, particularly in a declining interest rate environment, is worth more unpaid than paid. So paying off a loan early in a declining interest rate environment doesn't give you certainty. I mean, not all loans get paid off. Well, it's not to give you certainty, but, you know, but it's not necessarily good for a lender to have a performing loan paid off. That's number one. Number two is that's not the consideration that's in the complaint, of course. Well, why isn't it? Was that consideration then for the Vista Loan Loan? Same thing. If there was no consideration there. Your Honor, I don't know. It's not before the record. I don't know what the consideration of the Vista Loan Loan was. Well, I want to ask you a question, really. I mean, I'm from North Dakota. I'm not from California. So I'm not too familiar with attorney's practice. But, you know, this appeal has a very narrow focus. And we could the parties could decide the issue. The court could decide the issue. If we knew what the FDIC correspondence file said, you refused to give it to the other side. Would you be willing, if we asked you, to provide it for the court? On this record, no, Your Honor. It's not before the court. Okay. It's not before the court. That means that if we disagree with you, there's I don't know how many attorneys to pay and how much for the clients to pay. It must be pretty good. Okay. I understand. Your Honor, it is a strange position. Put aside the legal arguments in the case. This is strange on both sides. You have a writing which, if it said loan, as opposed to loans, it would be unambiguous in your favor. It has an extra letter in it. Your Honor. So far as I can tell. Let me finish. So far as I can tell, nobody says in this record on either side with attorneys, I assume, being paid by their clients, wait a minute. It says loans, but I meant loan. Or let me show you the minutes. We'll approve the one. And so we're fighting here, and you're entitled to fight this out on this record. We're fighting here about a question that could easily be cleared up. And I think that's what Judge Breyer is asking about. If in fact the FDIC only approved one reduction, they're out of court. If in fact the FDIC approved more than one, then it's a little unfair. And, you know, you're entitled to bring the case to us on the record as it exists, but it is kind of strange. Your Honor, this is a statute of frauds case. My understanding, of course, is it can be a harsh statute. But this is these are sophisticated real estate developers. This is not the only set of loans that they had. They're relying on a $700,000 contract based on a one line of an e-mail that referenced another property. And if they were so they. And they had one extra. And from your side of the case, had one extra letter. That's the problem. If they had said we've approved your reduction of your loan, then we wouldn't be in court, would we? You know, if they had this other e-mail, they should have alleged it. If they had consideration that was based on they're going to pay the loan off early, they should have alleged it. Now they want to allege what they alleged originally was they forbore from suing the FDIC for fraud. Right. And we all know that they didn't have such a claim. But they want to amend their complaint. Paying off a loan early and that's the problem you face depends on whether the loan is well secured or whether it's not. It is well secured, Your Honor. They sold that property for $7.4 million. Listen, you would have seen that my point was favoring you. Once again, this loan is well secured. So paying off the loan early is not consideration. It's the negative side of consideration. That's exactly right. This is not a secure loan. If it's not a well secured loan, then you've got a different ballgame. Exactly. That's exactly right. If they'd amended their complaint, and that's I guess the question Judge Farris is asking, if they'd amended their complaint to say, oh, no, the consideration was that we were going to pay this loan off early, presumably you would have said that's not consideration at all. Yeah. It's a performing loan. But did they make that argument to the district judge? No. Well, they wanted to amend. Right. But did they say they wanted to amend to say that? They wanted to amend to say that the consideration was they agreed to pay the loans off early. That is nowhere in anything. That's just ---- Put aside whether that's in writing. I'm trying to figure out whether a district judge in this case could say, as Judge Farris just said, well, that would be a futile amendment because that's not really consideration. Your Honor ---- Did he say that on this record? No. The Court here said that could be consideration. It could be. He did say ---- That's what the Court said. We disagree with that, particularly under certain circumstances. And I'm saying it doesn't solve the writing issue. I'm just focusing on the consideration issue. But, you know, it doesn't ---- in our view, that does not constitute consideration, with all due respect. On the issue of essential terms, you can use parole evidence to fill in the blanks. Like if the agreement says, I agree to sell you my house, and it doesn't really describe what the house is, you can have parole evidence to more specifically describe what the house is. In the Alameda case, which they rely on as one of their essential cases, there's a great case in point. In that case, the agreement said the State, the City had the option to repurchase said Beltline Railroad. And the question was, well, that doesn't satisfy statute of frauds. That's too vague. And the Court said, no, that's a key. We know what the Beltline Railroad is, and we can then ---- parole evidence is good for that. Here, we don't have ---- we have the opposite. We have the email saying the Loma Vista property, and they want to change it to the Roxbury property. You cannot use parole evidence to be at war with the written agreement. Again, these are very sophisticated parties here. If they had these emails, other writings, they could have attached them to their complaint. Now they want to change the complaint. They want to change the consideration, and they want to change other aspects of the loan. And that's what the statute of frauds is for. They're going to rebut in a minute. And what is your version of the bottom line of this Court's decision? What should we say if we decide for your complaint? I think, Your Honor, I think what this Court should decide is you cannot ---- when you have a writing that refers to another property, you cannot have parole evidence under the statute of frauds in California to be at odds with what the writing says. Loans is not a key. If there's any key under the Alameda case, it's the Loma Vista. Loma Vista. And the Sterling case is very good on this, Your Honor. It says you can have extrinsic evidence to be admissible if it's ambiguous. And the Court said loans was ambiguous. But the writing must include essential contract terms. It must identify the property. That's what the Supreme Court of California said in the case. May I interrupt you one second? Yes, sir. I'm looking at paragraphs 13, 14, and 15. In paragraph 13, the complaint says that they had writing with the Martin O'Riordan, and in that they suggested they said we want to negotiate about 10 percent discount on two loans. And Mr. O'Riordan said he had to obtain FDIC committee authorization for a discount on those loans. Now, first of all, if the committee had written, had acted according to the statute, statute of frauds would be satisfied. And finally, they said the representation on September 15th was an acceptance of their proposal. Now, all of that would indicate a pleading that the statute of frauds was supported and was complied with. I don't think so, Your Honor. It still does not – there's no essential term of what they were going to do for this reduction of 10 percent in these loans. I mean, it's just – it's not – You say that's no consideration? No. We said it in our brief. That's not a consideration. Your position is there's nothing – I'm sorry, Judge. Never mind. No, please. No, that's okay. I just want to understand your position. Your position is there's nothing in writing that says what they're going to do in return for the reduction. That's true. There's nothing in writing about the prop that identifies the property. In fact, what they identify is at war with what they're saying now. And that's – that's not permitted under the statute of fraud. You can't do that. That's the whole purpose of the statute of frauds. Okay. I'm just – I think your time – your time has expired. Yes. This Court be affirmed. Thank you. Your Honors, I'm concerned about the consideration argument because consideration under California law can be two things. One, it can be a benefit to the FDIC. It can also be what the statute calls prejudice to our side. A detriment to your side. Detriment to our side. Here we're paying off early. You could allege in a person made a complaint and you're paid off early at the bottom of a market at a bottom barrel price. That was a consideration of detriment we faced. And let's assume – let's assume that can be consideration. Again, tell me where in writing you offer to do that. This is the email that is part of the record, was part of the complaint. And it's – well, I referenced earlier that the second line of the – No, no. I just – tell me where there's an offer by your side to pay off early. Well, I don't have that – I don't have that in the record, Your Honor. That's part of the negotiations that I could allege in a person made a complaint. Well, but that stuff you have. In other words, I understand that you haven't been given access to what they have, and that's troublesome. Right. But with respect to what you must have, any writing that you submitted to them to make an offer. And so is everything you have in this record in front of us? No, Your Honor. I didn't have a chance to amend. My understanding of what the issue was is whether the email pertained to both properties. So I looked at the offer approved for this Court about the source. So when you offered to amend your complaint, did you identify another writing that would complete the – complete the puzzle here? I didn't, because I didn't know that the Court was going to grant the motion to dismiss in the statute of frauds. I didn't know what the issue was going to be, so I couldn't address it. I didn't have a chance to do that. So I know that the consideration issue was at a point, and I addressed that with an offer of proof in this briefing, what that would be. There's the consideration and also the identity of the property, that all the negotiations, as Judge Bright pointed out, concerned a global deal on everything. And the offer was an acceptance of – there was an acceptance of an offer for a global deal on everything. And that was – We look at this record as it was before the Court. What do we see that says that there's no statute of frauds violation? Well, Your Honor, I think that the general idea is that this is our first complaint, and we should be given leave to amend. I think also the offer of proof that we have, that we did submit – In other words, there's nothing. No, Your Honor. This is September 15, 2014. Well, I'm asking you, what is there in the record? And you're saying what you would have alleged if you had been granted leave to amend. But I'm asking you, when we look at this case, what is there in the record? There's a September 15, 2010 email. It contains both parts of the promise. A 10 percent reduction, our providing lender financing, which means payoff of the loan. There's both sides in that email. That email – there's a civil code section that says – We have to interpret what? The email. And that's what California law says. You interpret the September 15, 2010 email by extrinsic evidence. And California law does not, in fact, require all essential terms to be in the writing. And I've cited case law to that effect. But we do have, I think, the major points in that email. 10 percent reduction, lender financing to payoff, our side of the obligation. So it's in that email. But you heard what he said, though, didn't you? You had – we're talking about two different parcels in two different situations. Do you agree with that? No. It was all dealt with together as one negotiation. We have to find that. Otherwise, you lose. Isn't that so? Well, we allege it in the complaint. We allege that this was part of a global negotiation. Yeah, but we're talking about the statute of frauds issue now. Don't you have to convince us that there's a writing that obligates them to make a – to give you a principal reduction on all loans? Yes. And we have that. It's a September 15, 2010 email. So could they have – let's assume that instead of the position you're taking now, you had come to court today and said, we didn't want to pay off the Roxbury loans early. They were a pretty good deal. Could they have enforced this against you? In a New York minute. In a New York minute. And you wouldn't be saying, you wouldn't be saying, my God, there's nothing here that obligates us to pay off the Roxbury loans early. Because we would have all kinds of – the federal government has all kinds of procedural protections we do not enjoy. Okay, but I'm interested again. What document obligates you to pay the Roxbury loans off early? Well, the September 15, 2010 email. Okay, but let's assume that's not sufficient. I'm sorry.   I just wanted to ask you a question. Is there another document from which they could come back and say, you've obligated yourself to pay these loans off early? Well, our offer, I believe, was an offer. You've identified that one to us. That's the one that says please accept this offer to discount our loans 10 percent. But it doesn't say to pay them off early, does it? It does not. But again, I didn't look at our record in terms of this particular issue about what I could attach. I didn't know this would be the issue. But that was the issue. The issue was consideration. The judge, even though the judge may have been wrong, he said, you've got to show me something that tells me what you obligated yourself to do in return for the alleged promise by the FDIC in this September 15th letter. And you didn't identify anything, did you? Well, I would disagree. And I know the Court doesn't want to focus on that September 15, 2010 email. But I think it's sufficient. Well, if it's sufficient, you win. So we don't have to, right? Okay. Well, beyond that, you know, I think the FDIC committee notes would reference the offer that was made and my client accepted it. And I think that would be sufficient under any opportunity that they would have to sue us. Those committee notes would reflect the terms of the deal, reflect that my client accepted that deal. Thank you. Thank you, Your Honor. Thank you, counsel, on both sides for your arguments and your briefs.
judges: Bright, Farris, Hurwitz